# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                                        )
                                              )      Case No. 06-24245-JAD
JASON D. MELLORS and                          )
DARLENE L. MELLORS,                           )      Chapter 13
                                              )
        Debtors.                              )
_____ X
                                              )
COASTAL CREDIT, L.L.C.,                       )
                                              )
        Movant,                               )      Related to Document No. 26
                                              )
                                              )
    - v -                                     )
                                              )
JASON D. MELLORS and DARLENE                  )
L. MELLORS, and RONDA J.                      )
WINNECOUR, TRUSTEE,                           )
                                              )
        Respondent.                           )
_____ X


Appearances:    James Valecko, Esq., for Coastal Credit, L.L.C.
                Anicia Ogonosky, Esq. and William Buchanan, Esq. for the
                Debtors


## MEMORANDUM OPINION

This Memorandum Opinion constitutes the Court's findings of fact and
conclusions of law pursuant to Fed. R. Bankr. P. 7052. The matter before this
Court is Coastal Credit L.L.C.'s Objection to Confirmation of the Debtors' amended
Chapter 13 Plan. This matter is a core proceeding pursuant to 28 U.S.C. §§

157(b)(2)(A) (L) and (O).  Pursuant to the Objection, Coastal Credit, L.L.C. ("Coastal

Credit") asks that this Court prohibit the Debtors from modifying their Chapter 13

Plan to compel Coastal Credit to accept the surrender of its collateral as payment

on account of Coastal Credit's allowed secured claim.   For reasons set forth more

fully in this Memorandum Opinion, the Court hereby overrules the Objection and

finds as follows, to-wit:

## I.

This case was commenced by the Debtors, Jason and Darlene Mellors

("Debtors" or the "Mellors"), filing a voluntary petition under Chapter 13 of the

United States Bankruptcy Code on September 1, 2006.[1]

Prior to the bankruptcy, and pursuant to Retail Installment Contract and

Security Agreement executed by the Debtors on July 17, 2004, Coastal Credit

financed the Debtors' purchase of a used 1999 Mercury Villager.  Pursuant to the

Retail Installment Contract and Security Agreement, the Debtors granted Coastal

Credit a security interest[2] in the vehicle and Coastal Credit perfected its security

interest by noting its lien on the title to the vehicle on October 15, 2004.

In addition to household uses, the husband debtor uses the Mercury

Villager to travel to and from work.  In the Debtors' bankruptcy case, the Debtors

---

[1]  This case was originally assigned to the Honorable Judith K. Fitzgerald.  By Order dated May 4, 2007,
this case was transferred to the undersigned Bankruptcy Judge.

[2]  In the transaction, the loan proceeds advanced by Coastal Credit were also used by the Debtors to finance
a service contract on the vehicle.  Because the loan proceeds were not used solely for the purchase of the vehicle, it
appears that the security interest obtained by Coastal Credit was not a "purchase money security interest" and is
merely a garden-variety lien.

filed schedules of assets valuing the 1999 Mercury Villager at $3,580.00. (Docket No. 9). The Debtors also filed schedules of liabilities, which provided that Coastal Credit had a claim of $6,985.99. (Id.). The schedules of liabilities further provided that Coastal Credit's claim was a secured claim to the extent of the value of the Mercury Villager, with the remaining portion being scheduled as a general unsecured claim. (Id.).[3]

Consistent with the schedules of assets and liabilities, the Debtors filed a Chapter 13 Plan dated September 11, 2006. In the Chapter 13 Plan, the Debtors proposed to repay Coastal Credit's scheduled secured claim in the amount of $3,580.00 over the sixty month life of the Plan along with interest at the rate of 9 percent. (Docket No. 8). The amount of the monthly payment proposed by the Debtors to Coastal Credit was $120.00 per month. (Id.). The Chapter 13 Plan contemplated only a modest recovery for general unsecured creditors, for which Coastal Credit's deficiency claim would share *pro rata*. (Id.).

Coastal Credit's viewpoint of the amount of its claim, and the value of its collateral, diverged somewhat from what the Debtors had scheduled. According to the proof of claim it filed on September 26, 2006, Coastal Credit asserted that the total amount of its claim was $8,823.84 and that the value of its collateral was $7,525.00. (Claim No. 4). Coastal Credit also stated in its claim that it was entitled to accrue interest at the rate of 18 percent on its claim even though

---

[3] Pursuant to 11 U.S.C. § 506(a), a creditor's claim is secured only to the extent of the value of collateral; any claim over and above the value of collateral is unsecured. Associates Commercial Corp. v. Rash, 520 U.S. 953, 956, 117 S.Ct. 1879 (1997).

Coastal Credit was admittedly under secured, but the claim did not cite any legal authority for this proposition. (Id.).[4]

Given the disparity of their respective positions, and to avoid a contested plan confirmation hearing and a contested "cram down" action pursuant to 11 U.S.C. § 506, the Debtors and Coastal Credit resolved their differences and the Debtors' Chapter 13 Plan was confirmed by the Court on December 27, 2006. (Docket No. 21).  To evidence their agreement, the Debtors and Coastal Credit entered into a "Stipulation as to the Treatment of Coastal Credit, LLC" dated January 8, 2007 (the "Stipulation"). (Docket No. 24).   The Court approved Stipulation is remarkably simple, and provides in pertinent part as follows:

1.   The Debtors' 1999 Mercury Villager . . . is deemed to have a secured value of $8,823.84.

2.   That the secured value of Coastal Credit, LLC's claim shall be paid with interest at 9.5% with a monthly payment of $185.32.   The remaining portion of Coastal Credit, LLC's claim shall be treated as unsecured.

3.   Coastal Credit, LLC shall not be required to release its lien on [the] Title until the Plan has been successfully completed.

4.   The terms of this agreement shall be deemed incorporated into the Debtors' Plan and the Trustee may begin to make distributions to Coastal Credit, LLC according to the terms of this Order.

---

[4]  11 U.S.C. § 506(b) permits oversecured creditors to assess interest.  11 U.S.C. § 502(b)(2) disallows claims for unmatured interest on unsecured claims.

(Id.).

About one month after confirmation of their Plan and entry of the Stipulation, the Debtors learned of structural problems with their automobile. At a July 18, 2007 hearing held before the Court, Coastal Credit acknowledged that it did not dispute the Debtors' rendition of the facts relating to the structural problems of the Mercury Villager. The Debtors' rendition of the facts are that:

> . . . In February, 2007, Debtor took his vehicle to be inspected. Debtor was asked if he had recently been in an accident because the frame in his car was cracked and needed to be repaired prior to having an inspection sticker placed on it. The Debtor was told that the cost of repairing the frame would be several thousand dollars. The Debtor cannot afford the lump sum payment to properly repair the vehicle and remove it from the inspection station. As a result of this discovery, the Debtor's only vehicle would remain at the inspection station, inoperable. Although the vehicle had been inspected at previous inspection stations, this defect had never been discovered. Furthermore, title to the 1999 Mercury Villager does not state that it was reconditioned.

(Debtor's Brief in Support of Confirmation of Chapter 13 Plan Dated March 12, 2007, Docket No. 38, at p. 3).

On March 12, 2007,[5] the Debtors filed an amended Chapter 13 Plan pursuant to 11 U.S.C. § 1329.[6] The modification was necessitated by the fact that

---

[5] The Court notes that the amended Plan is mistakenly dated March 12, 2006, when it was filed March 12, 2007.

[6] Section 1329 of the Bankruptcy Code states, in pertinent part, as follows:

(a) At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or holder of an allowed unsecured claim, to -

(continued...)

the Debtors, while using their best efforts, cannot afford to pay for an inoperable

vehicle and finance a replacement vehicle at the same time. Thus, it appears that

this Chapter 13 case would fail in the absence of an amendment to the existing

Plan.

The amended Plan proposed by the Debtors provides for: (a) the surrender

of the vehicle to Coastal Credit in satisfaction of any secured claim in favor of

Coastal Credit; and (b) Coastal Credit's deficiency claim sharing *pro rata* in any

distributions that any other unsecured creditors may receive in this case. (Docket

No. 26).

Coastal Credit opposed the relief requested by the Debtors and objected to

confirmation of the amended Chapter 13 Plan. In support of its objection, Coastal

Credit argues that the Sixth Circuit Court of Appeals' decision in <u>In re Nolan</u>, 232

F.3d 528 (6th Cir. 2000) controls this case. Coastal Credit interprets <u>Nolan</u> to hold

that 11 U.S.C. § 1329(a) limits a debtor to two options when modifying a

confirmed Chapter 13 plan, and those options are either: (1) increasing or

---

[6](...continued)

   (1) increase or reduce the amount of payments on claims of a particular class provided for
   by the plan;

   (2) extend or reduce the time for such payments;

   (3) alter the amount of the distributions to a creditor whose claim is provided for by the
   plan to the extent necessary to take account of any payment of such claim other than
   under the plan; . . .

11 U.S.C. § 1329(a)(2006).

reducing the <u>amount</u> of payments, or (2) extending or reducing the <u>time</u> for payments. Coastal Credit argues that the Debtors' amended Plan does neither.

As another basis for its objection, Coastal Credit further states that where parties agree to a fair crammed-down value of collateral, and where the creditor actively participates in establishing this value, it is inequitable to shift the risk of the collateral's depreciation back to the creditor after the debtor has used and abused the collateral. According to Coastal Credit, not only does § 1329(a) prohibit this type of modification, both 11 U.S.C. §§ 1325(a)(5)[7] and 1327(a)[8] also prohibit post-confirmation modification through surrender.

Conversely, the Debtors maintain that the modification of plan provisions found in 11 U.S.C. § 1329 evidence a Congressional intent that Chapter 13 relief is, to a certain degree, malleable to the facts and circumstances confronting individual debtors. The Debtors further posit that surrender is permissible in this case because § 1329(a) permits changes to be made to "payments" to creditors under the confirmed plan. According to the Debtors, surrender of the collateral to Coastal Credit equates to a change of "payment" and thus the Debtors contend that the proposed modifications at issue comply with the plain language of the

---

[7] Section 1325(a)(5) of the Bankruptcy Code provides that where a secured creditor has not accepted the plan, the plan cannot be confirmed if, among other things, "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim . . ." 11 U.S.C. § 1325(a)(5)(B)(ii)(2006).

[8] Section 1327(a) of the Bankruptcy Code states that the "provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a)(2006).

Bankruptcy Code.  The Debtors further argue that they should not be forcefully made worse off than they already are (*i.e.,* as debtors without an operable vehicle) when the defect in the automobile's frame was unknown to them when they entered into the Stipulation.

Given the above, the Court is faced with the difficult task of balancing the finality of a confirmed Chapter 13 plan (as well as the finality of a court approved Stipulation) against the terms and conditions of 11 U.S.C. § 1329(a), which permits post-confirmation modification of Chapter 13 plans in certain situations.

## II.

The Third Circuit Court of Appeals has held that an order confirming a Chapter 13 plan is a final order.  <u>In re Szostek</u>, 886 F.2d 1405, 1413 (3d Cir. 1989).  The court in <u>Szostek</u> emphasized the importance of finality as a goal in bankruptcy law by quoting the following language found in the case of <u>In re Penn Central Transportation Co.</u>, 771 F.2d 762, 767 (3d Cir. 1985):

> [T]he purpose of bankruptcy law and the provisions of reorganization could not be realized if the discharge of debtors were not complete and absolute; that if courts should relax provisions of the law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated; that creditors would not participate in reorganization if they could not feel that the plan was final, and that it would be unjust and unfair to those who had accepted and acted upon a reorganization plan if the court were thereafter to reopen the plan and change the conditions which constituted the basis of its earlier acceptance.

<u>Szostek</u>, 886 F.2d at 1409.

Pursuant to 11 U.S.C. § 1327, a confirmed plan is binding on a debtor and each creditor.  11 U.S.C. § 1327(a) (2006).  Therefore, absent a timely appeal, such an order is *res judicata* and the terms of the plan are not subject to collateral attack. <u>Szostek</u>, 886 F.2d at 1409-1413.  Thus, *res judicata* prohibits modification based upon issues that were or could have been litigated at the time of the hearing on confirmation. <u>Id</u>. at 1408 (refusing to revoke a Chapter 13 confirmation order even though a creditor alleged that the confirmation plan violated the substantive requirements of § 1325).[9]

In the present case, this Court must balance judicial efficiency and the Third Circuit's general policy favoring finality of confirmed plans against the Congressional mandate found in 11 U.S.C. § 1329(a), which creates a limited exception to the binding effect of confirmed plans as set forth in § 1327(a).

Section 1329(a) of the Bankruptcy Code does permit a debtor, the trustee, or an unsecured creditor to request post-confirmation modifications to a Chapter 13 plan before completion of payments under the plan. <u>In re Smith</u>, 259 B.R. 323, 326 (Bankr. S.D. Ill. 2001). Thus, when read together, the modification provisions found in § 1329 appear to render the binding effect of § 1327 meaningless.

Appearances, however, can be misleading because debtors do not have an unqualified right to invoke relief under § 1329 of the Bankruptcy Code. *Cf.*

---

[9]   According to the court in <u>Szostek</u>, fraud is the only predicate to justify revocation of a confirmation order.  <u>Szostek</u>, 886 F.2d at 1413; <u>In re Fesq</u>, 153 F.3d 113, 118 (3d Cir. 1998); <u>In re Szalinski</u>, 360 B.R. 104, 106 (Bankr. W.D. Pa. 2007); <u>In re Miller</u>, No. 99-25616, 2007 WL 81052, *4 (Bankr. W.D. Pa. Jan. 9, 2007).

<u>Marrama v. Citizens Bank of Massachusetts</u>, ___ U.S. __, 127 S.Ct. 1105 (2007)(holding that debtors who have not engaged in good faith conduct do not have an unqualified right to convert a chapter 7 case to a chapter 13).  Rather, this Court holds that a predicate to invoking relief under 11 U.S.C. § 1329 is a showing by the proponent of the plan modification that a material change in circumstances, not reasonably anticipated at the time of confirmation, has occurred that would warrant relief from the prior confirmed plan.

This Court acknowledges that outside of this District, some courts have held that there is no threshold requirement of a change in circumstances necessary for a plan modification in Chapter 13.  <u>Barbosa v. Soloman</u>, 235 F.3d 31 (1ˢᵗ Cir. 2000); <u>Matter of Witkowski</u>, 16 F.3d 739 (7ᵗʰ Cir. 1994); <u>In re Meeks</u>, 237 B.R. 856 (Bankr. M.D. Fla. 1999); <u>In re Perkins</u>, 111 B.R. 671 (Bankr. M.D. Tenn. 1990); <u>In re Evans</u>, 77 B.R. 457 (E.D. Pa. 1987).  Interpreting congressional intent, the court in <u>Meeks</u> observed, "Congress did not include any language [in  § 1329] indicating an intent to make a substantial change in circumstances a threshold requirement for any such modification of the plan." 237 B.R. at 859.  This Court, however, declines to follow these holdings because 11 U.S.C. § 1327 evidences Congress' intent that confirmed plans should be accorded a great deal of finality.

Other courts have held that a prerequisite to modification of a confirmed Chapter 13 plan is the proponent of the modification demonstrating a material or substantial change in circumstances, such as a change in the debtor's income or

00000926.WPD                          -10-

expenses, that was not anticipated at the time of the confirmation hearing.[10] In re Gallagher, 332 B.R. 277, 283 (Bankr. E.D. Pa. 2005) (recognizing that there must be some sort of changed, unforeseen circumstances present to permit post-confirmation modification); In re Dunlap, 215 B.R. 867, 869 (Bankr. E.D. Ark. 1997) ("To avoid the preclusive effect of the principle of *res judicata*, the modification should be necessitated by an unanticipated, substantial change in circumstance affecting the debtor's ability to pay."); In re Nelson, 189 B.R. 748, 751 (Bankr. D. Minn. 1995) ("...modification is warranted only when an unanticipated change in circumstances affects implementation of the plan as confirmed."); In re Butler, 174 B.R. at 44 (requiring unanticipated, substantial change of circumstances before a confirmed plan may be modified pursuant to § 1329); In re Lynch, 109 B.R. 792, 796 (Bankr. W.D. Tenn. 1989) ("...modification of a confirmed plan should require a showing of changed circumstances rather than be granted routinely on the mere request of a debtor or other authorized party."); *but see* In re McNulty, 142 B.R. 106, 109 (Bankr. D.N.J. 1992) (permitting modification where there is "a showing of changed circumstances" that need not

---

[10] Section 1329(a) of the Bankruptcy Code provides that, in addition to the debtor, both the trustee and unsecured creditors have standing to seek a modification of a confirmed Chapter 13 plan. *See* 11 U.S.C. § 1329(a)(2006). Some courts suggest that the standard of proof for a modification proposed by a creditor or trustee is higher than the standard of proof imposed when a debtor is the proponent of the modification. *See, e.g.,* In re Perkins, 111 B.R. at 673 (discussing, but not applying, the various schools of thought). This Court declines to adopt different standards depending on the status of the proponent seeking the modification. The Court reaches this conclusion because the plain language of 11 U.S.C. § 1327(a) unequivocally states that a confirmed plan is binding on the debtor and each creditor. Therefore, the standard elucidated by this Court in this Memorandum Opinion applies equally as well to debtors, creditors, and trustees alike.

be "extraordinary, as is required to obtain a hardship discharge under Code section 1328(b).").

Courts have yet to define a set of factors considered in determining what type of circumstances constitute "substantial and unanticipated change." Yet, some cases give guidance on the type of change in the debtor's circumstances required to support post-confirmation modification. *See e.g.*, In re Hoggle, 12 F.3d 1008, 1011 (11th Cir. 1994) (surmising that "modification [would be] permissible where problems such as a 'natural disaster, a long-term layoff, or family illness or accidents with attendant medical bills prevent compliance with the original plan'."); In re Miller, No. 99-81339, 2002 WL 31115656, *2 (Bankr. M.D.N.C. Apr. 19, 2002) (substantial change existed where debtors: (1) could not find a replacement driver for their business when their son's health problems precluded him from driving; (2) had to spend $16,000.00 to replace engine and the transmission in a freightliner used in their business; and (3) became responsible for three grandchildren, who were recently placed in their care); In re Butler, 174 B.R. at 46-47 (changed circumstances existed where debtors' uninsured vehicle was heavily damaged in an accident 2 ½ years after plan confirmation, but modification not allowed due to debtor's inability to maintain collision insurance in breach of order of the court); In re Arnold, 869 F.2d 240, 241 (4th Cir. 1989) (change in amount of confirmed plan payments justified by debtor's substantial increase in income); In re Gronski, 86 B.R. 428, 432-433 (Bankr. E.D. Pa. 1988) (debtor's rent decrease of $145.00 per month constituted a substantial change in

debtor's circumstances to warrant a $115.00 post-confirmation increase in monthly Chapter 13 plan payments); <u>In re Euerle</u>, 70 B.R. 72, 73 (Bankr. D.N.H. 1987) (debtor's receipt of inheritance represented a substantial change that necessitated the modification for increased plan payments).[11]

In addition to the requirement that the change in the debtor's circumstances be significant (or substantial or material) most courts also require that the change be unanticipated. <u>In re Nelson</u>, 189 B.R. at 751 (". . .post-confirmation modification. . . is intended as a method of addressing unforeseen difficulties that arise during plan administration."); <u>In re Leland</u>, 96 B.R. 990, 992 (Bankr. D.S.D. 1989) ("Such modification is warranted only when an unanticipated change in circumstances affects implementation of the plan as confirmed.").

This Court agrees with the determination that a debtor does not have an absolute right to modify a confirmed Chapter 13 plan.  Instead, as a prerequisite to a § 1329(a) modification analysis, the party seeking the post-confirmation modification must first demonstrate that the debtor has experienced a substantial or material, unanticipated change in his or her circumstances that warrants modification.  Where this standard is met, *res judicata* will not preclude debtors

---

[11] There is very little case law demonstrating examples where a debtor's change in circumstances was insufficient to support modification.  <u>In re Flennory</u>, 280 B.R. 896, 898 (Bankr. S.D. Ala. 2001) (debtor's receipt of a tax refund does not constitute a major, unanticipated change in circumstances to warrant an increase in plan payments); <u>In re Jacobs</u>, 263 B.R. 39, 47-49 (Bankr. N.D.N.Y. 2001); <u>In re Nelson</u>, 189 B.R. 748 (Bankr. D. Minn. 1995) (proposed modification to confirmed Chapter 13 plan not permitted where debtor's voluntary remarriage to a man with a disability and loss of monthly child support payments, did not constitute unanticipated change in circumstance).

from seeking a modification. The Court reaches this conclusion because confirmation of a Chapter 13 plan must result in a significant degree of finality as set forth in 11 U.S.C. § 1327(a); the language of § 1329(a) should not unnecessarily dilute the integrity of confirmation by permitting repetitive modification without cause.

## III.

This Court's legal conclusion that a debtor does not have an unfettered right to seek a modification of a confirmed plan is particularly acute in light of the fact that § 1329(b)(1) makes applicable § 1325(a) to any proposed modifications under § 1329(a). 11 U.S.C. § 1329(b)(1) (2006). Section 1325(a)(3) requires that for a plan to be confirmed, it must be proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1325(a)(3) (2006). The incorporation of the good faith requirement into § 1329 means that a *modification* must also have been proposed in good faith in order for the Court to approve it. In re Butler, 174 B.R. at 48 (emphasis added).[12]

"Good faith" requires the absence of any abuse of the purpose and intent of the Bankruptcy Code. State Education Assistance Authority v. Johnson, 43 B.R. 1016 (E.D.Va. 1984). A debtor will not satisfy the good faith requirement of § 1325(a)(3) where the debtor's proposed modification is sought as a result of the debtor's own post-confirmation misconduct, neglect or unjustified failure to

---

[12] It is the "good faith" of the *proposer* of a plan modification that is the proper subject for inquiry under the statute. SouthTrust Mobile Services, Inc. v. Englebert, 137 B.R. 975, 986 (Bankr. D.N.D. Ala. 1992) (emphasis added).

comply with the confirmed plan.  <u>Butler</u>, 174 B.R. at 48.   Viewed differently, "an absence of good faith may lay in seeking to extract too many benefits from the Chapter 13 process at a creditor's expense."   <u>In re Taylor</u>, 243 B.R. 226, 229 (Bankr. W.D.N.Y. 2000).

Courts examine a debtor's good faith on a case-by-case basis and have found that the mere absence of fraud or mal-intent does not by itself establish the requisite "good faith."  <u>Butler</u>, <u>supra</u> (denying debtor's modification where debtor did not act in good faith when she failed to maintain collision insurance on her vehicle and continued to operate the vehicle despite not carrying such insurance); <i>see also</i> <u>In re McNulty</u>, 142 B.R. at 110 (proposed modification to Chapter 13 debtors' confirmed plan denied where debtors lacked good faith in electing to pay children's tuition rather than their mortgage payment); <u>SouthTrust</u>, 137 B.R. at 989 (finding lack of good faith for post-confirmation plan modification where debtor discontinued her employment thereby losing one-third of the household income because of the birth of a child).

The court's reasoning in <u>Butler</u> is particularly relevant here.  In <u>Butler</u>, the court held that the debtors, who abused and neglected the secured creditor's collateral after confirmation of the plan, could not modify the plan in an effort to unnecessarily shift the resulting loss to the secured creditor.  <u>Butler</u>, 174 B.R. at 48-49.  To hold otherwise would reward unscrupulous debtors for their wrongful conduct.

Unlike the facts presented in <u>Butler</u>, there is no suggestion in the instant case that the Mellors abused or neglected the collateral at issue.  The parties do not dispute the fact that the cracked frame to the Debtors' Mercury Villager was something that was unanticipated and remained undiscovered until after confirmation of the Debtors' Chapter 13 Plan- even though the vehicle had been inspected a few times before.

There is similarly no dispute as to the materiality of the change of circumstances in this case.  The record indicates that the vehicle was the Debtors' sole use of transportation, and that the vehicle was used to transport Mr. Mellors to and from work.  The Court has no doubt that the Debtors' inoperable vehicle impairs the Debtors' ability to complete their Plan; and the Court has no doubt that it is economically more feasible for the Debtors to surrender the vehicle and seek out replacement transportation.  The preponderance of the evidence is such that the Debtors have had a substantial or material change in circumstances, which was unanticipated at the time of confirmation (and at the time of the entry into the Stipulation).  This change of circumstances undeniably supports a good faith, post-confirmation modification of the type enumerated in § 1329 of the Bankruptcy Code.

## IV.

There is substantial division of opinion regarding whether the provisions of § 1329(a) permit the specific type of modification proposed by the Debtors in this

case. The modifications permitted to a confirmed plan under § 1329(a) include, in relevant part, modifications to:

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.
> . . .

11 U.S.C. § 1329(a)(1)-(3) (2006).

Coastal Credit asks the Court to deny Debtors' request for modification proposing surrender and asks that the Court adopt the Sixth Circuit Court of Appeals' interpretation of § 1329(a) as set forth in Nolan.

In Nolan, the debtor sought to modify a confirmed plan to surrender a depreciated vehicle as payment of a secured claim and to designate any deficiency as an unsecured claim. 232 F.3d at 529. The court in Nolan held that a bankruptcy court cannot authorize a plan modification that proposes surrender of collateral as payment of a secured claim. The court found that § 1329(a), by its plain terms, permitted modification only to the amount or timing of specific payments but not to increase or reduce the amount of claims. Id. at 534. Thus, the court in Nolan narrowly interpreted § 1329(a) so as to prohibit a modification that reclassified a deficiency remaining after surrender of a vehicle from secured to unsecured status. The court reasoned that such modification amounts to an

impermissible reduction (or disallowance) of a secured claim, an alteration of
rights that the <u>Nolan</u> court suggested is prohibited by § 1329(a). <u>Id.</u> at 532-533.

    <u>Nolan</u> relied heavily not only on the *res judicata* effects of §1327, but also
on the provisions of § 1325 of the Bankruptcy Code relating to the treatment of
secured claims.  According to the Sixth Circuit Court of Appeals, § 1325(a)(5)(B)(ii)
of the Bankruptcy Code[13] "mandates that a secured claim is fixed in amount and
status and must be paid in full once it has been allowed." <u>Id.</u> at 533.  The Sixth
Circuit held that: "For section 1325(a)(5)(B)(ii) to provide any protection to the
creditor when the debtor chooses to retain her collateral, the secured claim must
not be subject to modification throughout the life of the plan." <u>Id.</u> at 533, n. 8.
Thus, the <u>Nolan</u> court reasoned that the debtor's proposed surrender did not
adequately protect the secured creditor because it allowed the debtor to
unnecessarily shift the burden of depreciation from herself to the secured creditor.
<u>Id.</u> at 533.

    Several courts in subsequent cases have followed the court's reasoning in
<u>Nolan</u> and adopted its narrow interpretation of post-confirmation modification
under § 1329(a).  *See e.g.*, <u>In re Arguin</u>, 345 B.R. 876, 881-882 (Bankr. N.D. Ill.
2006) (prohibiting debtor from using § 1329(a) to strip down creditor's secured
claim that was "crammed down" at confirmation); <u>In re Coffman</u>, 271 B.R. 492,
496 (Bankr. N.D. Tex. 2002) (applying a narrow reading of § 1329(a) to disallow
debtor's post-confirmation modification, which would unfairly shift the risk of

___

[13]  See footnote 7, supra, for the relevant provisions of 11 U.S.C. § 1325(a)(5)(B)(ii)(2006).

depreciation to the creditor); <u>In re Jackson</u>, 280 B.R. 703, 705 (Bankr. S.D. Ala. 2001) (cautioning debtors to "make decisions about the retention or surrender of vehicles before confirmation."); <u>In re Adams</u>, 270 B.R. 263 (Bankr. N.D. Ill. 2001).

This Court has reviewed <u>Nolan</u> and its progeny carefully.  For the reasons set forth below, the Court respectfully disagrees with the <u>Nolan</u> Court's interpretation that § 1329(a) forbids the type of modification proposed in this case.

First, § 1329(a)(1) plainly and unequivocally permits modification to "increase or reduce the amount of payments on claims of a particular class provided for by the plan."  11 U.S.C. § 1329(a)(1) (2006).  The modification proposed by the Debtors here fits comfortably within the terms of § 1329(a)(1) in that the modification "reduces the amount of payments" on account of Coastal Credit's allowed secured claim from the amount stated in the parties' Stipulation. Specifically, it reduces payments to Coastal Credit down to the sum of (a) the amounts paid by the Debtors into the Plan on account of Coastal Credit's claim from the effective date of the original Plan until the date of the proposed modification; and (b) the value of the surrendered of the collateral.  Several courts agree that the language of § 1329(a)(1) contemplates this type of payment reduction.  *See e.g.*, <u>Bank One, NA v. Leuellen</u>, 322 B.R. 648, 654 (Bankr. S.D. Ind. 2005); <u>In re Knappen</u>, 281 B.R. 714, 717 (Bankr. D.N.M. 2002).

Second, § 1329(b)(1) states that several Bankruptcy Code provisions that govern an original plan also apply to post-confirmation modifications under §

1329(a).  These sections include, but are not limited to § 1322(b)[14] and the requirements of § 1325(a).[15]  An examination of the relevant portions of these provisions shows that § 1329(a) permits post-confirmation modification allowing surrender of collateral in satisfaction of a secured claim.

Section 1322(b)(8), which applies without qualification to modifications under § 1329(a), states that a plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." 11 U.S.C. § 1322(b)(8) (2006).  This provision of the Bankruptcy Code plainly and unequivocally contemplates surrender of collateral as a form of payment.  Section 1325(a)(5)(C), which also applies by virtue of § 1329(b)(1), clearly states that a debtor may choose to surrender property securing a claim.   11 U.S.C. § 1325(a)(5)(C) (2006).   Thus, in the matter before the Court the proposed modifications do not run afoul of any of the strictures mandated by §§ 1322, 1325, and 1329 of the Bankruptcy Code.

## V.

Even if <u>Nolan</u> was adopted within the Third Circuit, the Court is not persuaded that the holding in that case would preclude the Debtors' proposed modification.   At its core, <u>Nolan</u> precludes consideration of 11 U.S.C. § 1325(a)(5)(C) in the context of plan amendments; <u>Nolan</u> instead mandates the application of 11 U.S.C. § 1325(a)(5)(B), which among other things, requires that

---

[14]     Section 1322(b) provides permissive plan content.

[15]     Section 1325(a) establishes the requirements of confirmation.

the "value . . . of property to be distributed under the plan on account of such

[secured]  claim" must not be "less than the allowed amount of such [secured]

claim; ..."[16]

Given the holding in <u>Nolan</u>, the question before the Court then is whether

the Debtors' proposed Plan modification seeks to provide Coastal Credit with

"value"[17] less than the allowed amount of Coastal Credit's secured claim.

The Stipulation upon which Coastal Credit itself relies provides that "The

Debtors' 1999 Mercury Villager . . . is deemed to have a secured ***value of***

***$8,823.84***." *See* Stipulation at ¶1 (emphasis added).  To the extent Coastal Credit

is somehow arguing that the Stipulation remains binding on all parties, it

therefore would appear that Coastal Credit cannot have the benefits of the

Stipulation without any concomitant burdens.  Thus, to the extent Coastal Credit

relies on the Stipulation at issue, it is estopped from contending that the

surrender of the collateral to Coastal Credit will yield anything less than secured

"value of $8,823.84" and Coastal Credit's objection pursuant to 11 U.S.C. §

1325(a)(5)(B)(ii) is overruled by the Court on this basis.

---

[16] <u>Nolan</u> also focuses on the inequities which may exist when a debtor reaps "a windfall by employing subterfuge" at the expense of a creditor. <u>Nolan</u>, 232 F.3d at 534.  No facts are present in the instant case that would even hint at any subterfuge on behalf of the Mellors.  Indeed, the facts are just the opposite- that the Mellors have been proceeding honestly and in good faith.

[17] The use of the word "value" in § 1325(a)(5)(B), as opposed to some other word or phrase (such as "cash payments" or "distributions"), suggests that a debtor may surrender property to a secured creditor as an in-kind payment on a claim. As the bankruptcy court in <u>In re Hernandez</u> stated: "Surrender of collateral to a secured creditor is the indubitable equivalent of payment of the secured claim." 282 B.R. 200, 207 (Bankr. S.D. Tex. 2002) (citing <u>In the Matter of Sandy Ridge Development Corp.</u>, 881 F.2d 1346 (5th Cir. 1989)).

What Coastal Credit appears to be arguing, however, is that while the value provisions of the Stipulation may not be accurate in the current environment, the Stipulation's recitation setting forth the "allowed secured" component of the creditor's claim is enforceable, which in-turn triggers the 11 U.S.C. § 1325(a)(5)(B)(ii) analysis.    Based on the facts of this case, the Court refuses to enforce the Stipulation in that regard.

What Coastal Credit fails to recognize is that the Bankruptcy Code expressly contemplates that the Court may reconsider an allowed or disallowed claim for "cause" shown and that a "reconsidered claim may be allowed or disallowed according to the equities of the case."  *See* 11 U.S.C. § 502(j)(2006).[18]

Neither the Bankruptcy Code nor the Bankruptcy Rules define "cause" for reconsideration of a claim under § 502(j).[19]  However, under circumstances remarkably similar to the case now before the Court, other courts have held that

---

[18] Section 502(j) states:

> A claim that has been allowed or disallowed may be reconsidered for cause.  A reconsidered claim may be allowed or disallowed according to the equities of the case.  Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder.  This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

11. U.S.C. § 502(j) (2006).

[19]  The Court notes for the record that the Mellors case was argued concurrently with a companion case captioned: In re Kelly D. Tritt, Bankruptcy No. 06-25078.  Counsel for Coastal Credit briefed the applicability of 11 U.S.C. § 502(j) in those proceedings, and argued the merits of § 502(j) in the Mellors' case at the hearing held on July 18, 2007.

"bankruptcy courts have wide discretion in determining what will constitute adequate 'cause' for reconsideration of claims." <u>In re Zieder</u>, 263 B.R. 114, 116-120 (Bankr. D. Ariz. 2001)(reconsideration granted permitting debtors to surrender vehicle after an accident); *see also* <u>In re Jefferson</u>, 345 B.R. 577, 583 (Bankr. N.D. Miss. 2006)(reconsideration granted permitting debtors to surrender two cars to decrease plan payments due to post-confirmation disability and resultant diminished income); <u>In re Mason</u>, 315 B.R. 759, 761 (Bankr. N.D. Cal. 2004)(reconsideration granted allowing debtor to surrender car when debtor could no longer afford it); <u>In re Hernandez</u>, 282 B.R. 200, 207-208 (Bankr. S.D. Tex. 2002)(reconsideration granted where there was no showing of improper motive or unfairness, debtors could surrender vehicle in satisfaction of secured claim); <u>In re Johnson</u>, 247 B.R. 904, 908-909 (Bankr. S.D. Ga. 1999)(reconsideration is permitted when no bad faith is indicated and loss of debtor's job caused financial hardship); <u>In re Miller</u>, 2002 WL 31115656, at *4-6 (reconsideration permitted where debtors surrendered tractor 18 months after confirmation and the depreciation was not the result of debtors' abuse or neglect).  These courts have even held that reconsideration can occur after confirmation of a plan. *See*, *e.g.*, <u>In re Zeider</u>, 263 B.R. at 116-120.

In the Mellors' case, this Court finds ample cause to reconsider the allowed amount of Coastal Credit's secured claim.  No dispute exists as to the fact that the Mellors have proceeded in good faith and Coastal Credit has not offered any evidence suggesting that the Mellors "abused" the collateral.  Rather, the

undisputed facts are that the cracked frame to the Debtors' Mercury Villager was something that was unanticipated and remained undiscovered until after confirmation of the Debtors' Chapter 13 Plan- even though the vehicle had been previously inspected.  Thus, it appears that the Stipulation between the parties rested upon a mistaken assumption that the vehicle was operable, when in fact it was not.[20]  Upon finding out the true facts, the Mellors promptly filed their amended Plan to correct the situation.  The Court will not enforce the erroneous Stipulation under these circumstances.

As such, Coastal Credit's allowed secured claim is reconsidered and the Stipulation is vacated.  Coastal Credit shall have an allowed secured claim in an amount not to exceed the sum of: (a) the amounts paid by the Debtors into the Plan on account of Coastal Credit's secured claim from the effective date of the original Plan until the date of the proposed modification; and (b) the value of the surrendered collateral.  Any remaining claim that Coastal Credit may have is an unsecured claim.[21]

---

[20]  The Debtors state in their pleadings that, not only would the Debtors not have signed the Stipulation had they known of the defect in the Mercury Villager, they also would not have purchased the vehicle.  *See* Debtor's Brief in Support of Confirmation of Chapter 13 Plan Dated March 12, 2007, Docket No. 38, at p. 4.  Coastal Credit has not disputed this assertion.

[21]  Some legal authority appears to suggest that a creditor similarly situated to Coastal Credit may be entitled to some sort of administrative or priority claim for the Debtors' post-petition use of the creditor's collateral.  *See*, *e.g.*, In re Hibble, __ B.R. __, Bankruptcy No. 05-38556, 2007 WL 2067946, at *6 (Bankr. E.D. Pa., July 18, 2007).  Nothing contained in this Memorandum Opinion should be deemed or construed to be a determination as to whether Coastal Credit may assert all or a portion of its allowed unsecured claim as an administrative expense against the Debtors' estate.

In reaching this decision, the Court is mindful of Coastal Credit's claim of "unfair shifting of the risk of depreciation."[22]  The fact of the matter is that "the risk of depreciation of collateral is a risk a secured creditor always bears.  That is why car loans usually bear higher interest rates than home mortgages." Bank One v. Leuellen, 322 B.R. at 660; *see also* Zieder, 263 B.R. at 118 (stating that the risk of depreciation is something that the secured creditor has by virtue of §§ 502(j) and 506(a)).

In addition, in order for a debtor to obtain relief pursuant to both §§ 1329 and 502(j) of the Bankruptcy Code, the debtor must proceed in good faith.  This is a question of fact determined on a case-by-case basis.  The undisputed facts of this case demonstrate that the Mellors have been, and are, proceeding in good faith.

---

[22]  The Bankruptcy Code does not contain any provisions which discuss "shifting of risk."  Nevertheless, a secured creditor is not entirely kept adrift in a bankruptcy setting.  If a secured creditor believes that the collateral is depreciating as a result of the debtor's continued use of the property, the creditor could seek additional adequate protection pursuant to 11 U.S.C. § 361, and/or relief from the automatic stay to repossess the collateral pursuant to 11 U.S.C. § 362(d)(1). *See, e.g.,* In re Farmer, 257 B.R. 556 (Bankr. D. Montana 2000).  In the matter *sub judice,* Coastal Credit never made such a request to the Court.  The Court also notes that it is undisputed that the defect in the Mercury Villager's frame was discovered by the Debtors shortly after the filing of the Plan and Stipulation in this case.  As a result, the vehicle has remained untouched at an inspection station, and no additional mileage has been added to the vehicle.  Thus, it appears that while the value of the vehicle is significantly lower than the value set forth in the Stipulation, it appears that the value has not demonstrably declined as a result of the Debtor's use of the vehicle.  In fact, it appears that the stream of payments contemplated by the Stipulation actually overcompensates Coastal Credit in light of the actual condition of the vehicle and the Debtors' inability to use it.

The Court also notes that Chapter 13 debtors have a qualified right to dismiss a Chapter 13 case and then refile a second Chapter 13 case.  *See* 11 U.S.C. § 1307(b)(2006); *see also* In re Stone, 91 B.R. 423, 425 (Bankr. N.D. Ohio 1988); In re Hernandez, 282 B.R. at 206.  In the second case, the Chapter 13 debtor could pursue its § 506 "cram down" rights against the creditor.  This fact again supports the notion that the risk of depreciation of collateral is a risk a secured creditor always bears.  This Court agrees with the statement of Judge Bodoh in Stone that: "The Court sees no reason why a different result should follow when the debtor elects to modify a pending case rather than achieve the same result through dismissal and refiling." Stone, 91 B.R. at 425.

## VI.

For all of the foregoing reasons, the Court will enter an order which overrules Coastal Credit's objection and confirms the Debtors' amended Plan dated March 12, 2007.  The Court will also enter an order which vacates the Stipulation and  provides that Coastal Credit has (1) an allowed secured claim in an amount not to exceed the sum of  (a) the amounts paid by the Debtors into the Plan on account of Coastal Credit's secured claim from effective date of the original Plan until the date of the proposed modification, and (b) the value of the surrendered collateral; and (2) an allowed unsecured deficiency claim for any remaining sums due Coastal Credit.

Dated: July 26, 2007                    /s/ Jeffery A. Deller
                                        Jeffery A. Deller
                                        United States Bankruptcy Judge

cc:   Ronda J. Winnecour, Esq. Chapter 13 Trustee
      James Valecko, Esq., Counsel to Coastal Credit
      Anicia Ogonosky, Esq., Counsel to the Debtors
      William Buchanan, Esq., Counsel to the Debtors

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 06-24245-JAD |
| JASON D. MELLORS and | ) | |
| DARLENE L. MELLORS, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| ——————————————— | X | |
| | ) | |
| COASTAL CREDIT, L.L.C., | ) | |
| | ) | |
| Movant, | ) | Related to Document No. 26 |
| | ) | |
| | ) | |
| - v - | ) | |
| | ) | |
| JASON D. MELLORS and DARLENE | ) | |
| MELLORS, and RONDA J. | ) | |
| WINNECOUR, TRUSTEE, | ) | |
| | ) | |
| Respondent. | ) | |
| ——————————————— | X | |

**ORDER OF COURT**

**AND NOW**, this **26th** day of **July 2007**, an Objection to Confirmation of the

Debtors' Amended Chapter 13 Plan having been filed by Coastal Credit L.L.C. in

the above-captioned adversary proceeding;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT** for the

reasons set forth more fully in the Memorandum Opinion issued

contemporaneously with this Order:

1. Coastal Credit L.L.C.'s objection is **OVERRULED**;

00001104.WPD

2.   Debtors' Amended Plan, dated March 12, 2007, is **APPROVED** and

**CONFIRMED**;

3.   The parties' Stipulation, dated January 8, 2007, is **VACATED**;

4.   **IT IS FURTHER ORDERED** that Coastal Credit L.L.C. has:

(A)  an **allowed secured claim** in an amount not to exceed the sum of:

(i)   the amounts paid by the Debtors into the Plan dated September 11, 2006 on account of Coastal Credit L.L.C.'s secured claim from effective date of the original Plan until the date of the proposed modification (which is March 12, 2007); and

(ii)  the value of the surrendered of the collateral, and

(B) subject to the filing of an amended proof of claim as set forth below, an **allowed unsecured deficiency claim** for any remaining sums due Coastal Credit L.L.C.

5.   **IT IS FURTHER ORDERED** that Coastal Credit L.L.C. shall file an

**amended proof of claim** within **ten (10) days** of its disposition of its

collateral, but **no later than sixty (60) days** of the date of this Order.  The

failure to timely file an amended claim shall result in its disallowance.


Dated:  July 26th, 2007              /s/ Jeffery A. Deller
                                     Jeffery A. Deller
                                     United States Bankruptcy Judge


cc:   Ronda J. Winnecour, Esq. Chapter 13 Trustee
      James Valecko, Esq., Counsel to Coastal Credit
      Anicia Ogonosky, Esq., Counsel to the Debtors
      William Buchanan, Esq., Counsel to the Debtors